**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JAMES SANDERS,

                                Plaintiff,

              - v -                                Civ. No. 9:11-CV-326
                                                                   (LEK/RFT)

A. GIFFORD, *Correctional Officer*, *Auburn Corr. Fac.*,

                                Defendant.

**APPEARANCES:**                              **OF COUNSEL:**

JAMES SANDERS
09-A-3118
Plaintiff, *Pro Se*
Great Meadow Correctional Facility
Box 51
Comstock, New York 12821

HON. ERIC T. SCHNEIDERMAN            CATHY Y. SHEEHAN, ESQ.
Attorney General of the State of New York    Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

*Pro se* Plaintiff James Sanders initiated this civil rights action, pursuant to 42 U.S.C. § 1983, alleging that, while he was incarcerated at Auburn Correctional Facility, Defendant Gifford used excessive force against him during a pat frisk conducted on February 15, 2011. Dkt. No. 43, 2d Am. Compl. While this case is approaching its third year of pendency, the only issue that has been continuously presented to the Court for adjudication is whether Plaintiff properly exhausted his available administrative remedies prior to bringing this action. Several Motions before this Court

are addressed hereinbelow:

1) Plaintiff's Motion to Strike Defendant's Affirmative Defense, pursuant to Federal Rule of Civil Procedure 12(f) (Dkt. No. 48);

2) Defendant's Opposition to Plaintiff's 12(f) Motion and Cross-Motion to Dismiss (Dkt. No. 59);[1]

3) Plaintiff's Motion for Summary Judgment (Dkt. No. 74);[2] and

4) Plaintiff's Motion to Amend, pursuant to Federal Rule of Civil Procedure 15 (Dkt. No. 77).

## I. BACKGROUND

The procedural history of this case, though byzantine, requires some discussion in order to put into perspective why a case approaching its three-year milepost has yet to progress to any meaningful stage of discovery.

Plaintiff initiated this action on March 21, 2011, complaining of an incident of sexual assault that allegedly occurred on February 15, 2011. Dkt. No. 1, Compl.[3] Upon initial screening, Plaintiff's pleading was deemed insufficient to state a claim for relief and he was directed to amend his Complaint if he wanted to avoid dismissal of the action. Dkt. No. 4, Rep. Rec., dated Apr. 5, 2011; Dkt. No. 6, Dec. & Order, dated May 11, 2011 (adopting Report-Recommendation and Order). Plaintiff thereafter filed an Amended Complaint, which was accepted for filing and service

---

[1] As explained more fully below, Defendant's Motion to Dismiss was intended to be, and has been construed as, a Motion for Summary Judgment.

[2] This Court stayed Plaintiff's Motion for Summary Judgment pending resolution of all other pending Motions. Dkt. No. 75.

[3] In accordance with the prisoner mailbox rule, a prisoner's pleading is deemed to be properly filed at the time he hands the papers to the prison authorities for transmittal to the court. *Dory v. Ryan*, 999 F.2d 679, 681-82 (2d Cir. 1993), *modified on reh'g*, 25 F.3d 81 (2d Cir. 1994). The date Plaintiff filed this action is critical in Defendant's assessment that the matter was not properly exhausted.

was directed upon the Defendants.[4]  Dkt. No. 10, Am. Compl; Dkt. No. 18, Dec. & Order, dated Nov. 15, 2011 (approving amendments and directing service).  On several occasions, Plaintiff sought to amend his Amended Complaint, but because he failed to comply with the Court's Local Rules, those requests were denied without prejudice.  Dkt. No. 21, Mot. to Am; Text Order, dated Dec. 5, 2011; Dkt. No. 29, Mot. to Am.; Dkt. No. 30, Dec. & Order, dated Mar. 26, 2012.

On January 17, 2012, Defendants filed a Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), on the bases that Plaintiff failed to exhaust his administrative remedies prior to bringing this action, he failed to allege personal involvement of Defendant Fischer, and both Defendants were entitled to qualified immunity.  Dkt. Nos. 25, Not. of Mot., & 25-1, Mem. of Law. Plaintiff opposed the Motion to Dismiss, Dkt. No. 27, and also filed a proper Motion to Amend, Dkt. No. 31, which the Defendants opposed, Dkt. No. 32.  On June 21, 2012, this Court issued a Report-Recommendation and Order regarding the Defendants' Motion to Dismiss and Plaintiff's Motion to Amend.  Dkt. No. 35.  Therein, this Court noted that pursuant to the applicable standard of review and giving due liberality to the *pro se* pleading, we could not recommend dismissal based upon Defendants' claim that Plaintiff failed to exhaust his administrative remedies.  *Id*. at pp. 7-8. However, we recommended that Defendant Fischer be dismissed due to Plaintiff's failure to allege his personal involvement in any constitutional wrongdoing.  *Id*. at pp. 8-10.  And, in reviewing Plaintiff's Motion to Amend, the Court found that Plaintiff's proposed pleading was virtually identical to his Amended Complaint, but nevertheless allowed Plaintiff to amend his Amended Complaint consistent with the recommendations made therein.  *Id*. at pp. 10-12.  Those recommendations were approved by the Honorable Lawrence E. Kahn, United States District Judge,

---

[4] Plaintiff included two Defendants in his Amended Complaint: A. Gifford and Brian Fischer.  Dkt. No. 10.

*-3-*

and Plaintiff's Second Amended Complaint became the operative pleading in this matter. Dkt. No. 37, Dec. & Order, dated July 17, 2012; Dkt. No. 43, Pl.'s 2d Am. Compl.

On September 20, 2012, Defendant Gifford filed his Answer to the Second Amended Complaint. Dkt. No. 44. On November 19, 2012, Plaintiff filed a Motion, which was later construed by the Court to be a Motion to Strike Defendant's Affirmative Defense of Failure to Exhaust Administrative Remedies. Dkt. No. 48, Pl.'s Mot. to Strike; Text Order, dated Dec. 10, 2012. In reviewing Plaintiff's Motion, and determining to construe it as brought pursuant to Federal Rule of Civil Procedure 12(f), we directed Defendant to file a response on or before January 11, 2013. On January 10, 2013, Defendant's counsel requested permission to engage in limited discovery on the issue of exhaustion prior to responding to Plaintiff's Motion to Strike. Dkt. No. 50. The Court granted this request and set a limited discovery period of February 28, 2013. Dkt. No. 51. Upon being notified that the limited discovery had been completed, this Court directed Defendant to respond to Plaintiff's pending Motion to Strike on or before April 1, 2013. Dkt. No. 58. On April 1, 2013, Defendant filed his Opposition and a Cross-Motion to Dismiss, Dkt. No. 59, and Plaintiff, in turn, filed Opposition to Defendant's Cross-Motion, Dkt. No. 62.

Troubled by the already convoluted procedural mechanisms by which the exhaustion issue had thus far been presented to the Court, this Court issued an Order clarifying that, despite Defendant's failure to comply with this District's Local Rules in filing what amounts to be a Motion for Summary Judgment, this Court would construe it as such and we directed that Defendant provide a Statement of Material Fact and proper Notice to the Plaintiff advising him of the consequences of failing to adequately respond to the pending Motion for Summary Judgment. Dkt. No. 68, Order, dated Nov. 4, 2013; *see also* N.D.N.Y.L.R. 7.1(a)(3). We further provided Plaintiff with the

opportunity to amend his Opposition accordingly. *Id*. Eventually, the parties filed their respective supplements in accordance with that Order. Dkt. No. 71, Def.'s Statement Pursuant to Rule 7.1(a)(3) (hereinafter "Def.'s 7.1 Statement"); Dkt. No. 76, Pl.'s Resp. to Def.'s Material Facts (hereinafter "Pl.'s 7.1 Statement").

But, in the interim, Plaintiff filed a Motion for Summary Judgment, Dkt. No. 74, which this Court held in abeyance because it pertained to the substantive issues in this case and not the issue of exhaustion. Dkt. No. 74, Pl.'s Mot. for Summ. J.; Dkt. No. 75, Text Order, dated Dec. 19, 2013. And, on January 2, 2014, Plaintiff filed a Motion to Amend, pursuant to Federal Rule of Civil Procedure, seeking to add two Defendants. Dkt. No. 77. The Court directed Defendant to respond to Plaintiff's Motion to Amend, despite his request that the Motion be stayed pending resolution of the motion practice on exhaustion. Dkt. No. 78, Def.'s Lt.-Mot.; Dkt. No. 80, Text Order, dated Jan. 17, 2014. On February 3, 2014, Defendant filed a Letter in response to Plaintiff's Motion to Amend, which reads in its entirety:

> Please accept this letter as Defendant Gifford's response to plaintiff's motion to amend his complaint for the third time to add two additional defendants and additional claims. Dkt. No. 77. Case law is [sic] requires leave to amend be freely granted. Therefore, Defendant Gifford does not oppose the motion since leave will likely be granted following a review of the pleading for futility. Nonetheless, if the Court grants leave for Plaintiff to file a third amended complaint, Defendant Gifford respectfully reserves the right to answer or otherwise move against the third amended complaint that would supercede the second amended complaint.

Dkt. No. 81.

## II. STANDARDS OF REVIEW

### A. Motion to Strike

Federal Rule of Civil Procedure 12(f) states that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV.

P. 12(f). As the Second Circuit has noted, a "motion to strike an affirmative defense . . . for legal insufficiency is not favored and will not be granted unless it appears to a certainty that plaintiff[] would succeed despite any state of the facts which could be proved in support of the defense." *William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir. 1984) *vacated on other grounds by Salcer v. Envicon Equities Corp.*, 478 U.S. 1015 (1986) (internal quotation marks and citations omitted). Insufficiency as a matter of law "has three hallmarks: (1) there must be no question of fact that might allow the defense to succeed; (2) there must be no substantial question of law that might allow the defense to succeed; and (3) the plaintiff must be prejudiced by the inclusion of the defense. *Purdue Pharma L.P. v. Ranbaxy Inc.*, 2012 WL 3854640, at *2 (S.D.N.Y. Sep. 5, 2012) (quotation marks and citations omitted); *see also State of New York v. Almy Bros., Inc.*, 971 F. Supp. 69, 72 (N.D.N.Y. 1997). In this regard, a defendant's pleading is liberally construed. *S.E.C. v. Toomey*, 866 F. Supp. 719, 722 (S.D.N.Y. 1992). Even when facts are not in dispute, a motion to strike is not "intended to furnish an opportunity for the determination of disputed and substantial questions of law." *William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp.*, 744 F.2d at 939 (citations omitted). When "the defense is insufficient as a matter of law, the defense should be stricken to eliminate the delay and unnecessary expense from litigating the invalid claim." *Estee Lauder, Inc. v. Fragrance Counter, Inc.*, 189 F.R.D. 269, 272 (S.D.N.Y. 1999) (citations omitted).

### B. Motion for Summary Judgment

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to

interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary

judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991). Summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### C. Motion to Amend

FED. R. CIV. P. 15(a) states, in pertinent part, that leave to amend a pleading should be "freely given when justice so requires." *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003). Indeed, leave to amend should be denied only in the face of undue delay, bad faith, undue prejudice to the non-movant, futility of amendment, or where the movant has repeatedly failed to cure deficiencies in previous amendments. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Kropelnicki v. Siegel*, 290 F.3d 118, 130 (2d Cir. 2002) (citing *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 271-72 (2d Cir. 1996)). District courts are vested with broad discretion to grant a party leave to amend the pleadings. *See Local 802, Assoc. Musicians of Greater New York v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998). "The party opposing a motion for leave to amend has the burden of establishing that granting such leave would be unduly prejudicial." *New York v. Panex Indus., Inc.*, 1997 WL

128369, at *2 (W.D.N.Y. Mar. 14, 1997) (citing *Saxholm AS v. Dynal, Inc.*, 938 F. Supp. 120, 123 (E.D.N.Y. 1996)); *see also Lamont v. Frank Soup Bowl*, 2000 WL 1877043, at *2 (S.D.N.Y. Dec. 27, 2000) (citations omitted). This requires the non-movant to "do more than simply claim to be prejudiced." *Bryn Mawr Hosp. v. Coatesville Elec. Supply Co.*, 776 F. Supp. 181, 185 (E.D. Pa. 1991).

## III. DISCUSSION

Because each of the pending Motions relates to the threshold issue of exhaustion, the Court will discuss and address, to the extent practicable, all three pending Motions together. Furthermore, in light of the liberality to be afforded to *pro se* filings, the Court has reviewed all submissions as it relates to each pending Motion.

The Plaintiff's entire civil action centers around his allegation that on February 15, 2011, Defendant Gifford violated his constitutional rights when, during a pat frisk, he grabbed and strenuously squeezed Plaintiff's testicles causing injuries. *See generally* Dkt. No. 43, 2d Am. Compl. In the three years since this action began, the only discovery conducted centers around whether Plaintiff fully exhausted his available administrative remedies prior to bringing this action. Defendant contends that Plaintiff did not pursue all of the administrative remedies in accordance with the procedure established by the New York State Department of Corrections and Community Supervision ("DOCCS") and instead hastily initiated this action. Whereas Plaintiff contends that his administrative remedies were rendered unavailable to him by virtue of the actions of various DOCCS employees, both of whom he now seeks to add as defendants.

### A. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") provides, in pertinent part, that "no action shall

be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citations omitted). Exhaustion is similarly required even if the prisoner asserts futility as an excuse. *See Booth v. Churner*, 531 U.S. 731, 741 n.6 (2001) (refusing to "read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise") (cited in *Marvin v. Goord*, 255 F.3d 40, 43 (2d Cir. 2001)). Accordingly, the exhaustion requirements apply even where the grievance process does not permit an award of money damages and the prisoner seeks only money damages, provided the grievance tribunal has the authority to take some responsive action. *See Thomas v. Wright,* 2002 WL 31309190, at *5 (N.D.N.Y. Oct. 11, 2002) (citing *Booth v. Churner*, 531 U.S. 731). To properly exhaust a claim, a prisoner must comply with the state grievance procedures. *Jones v. Bock*, 549 U.S. 199, 218 (2010). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 101 (2006). Thus, for example, an "untimely or procedurally defective" administrative grievance does not constitute proper exhaustion. *Id*. at 83-84.

In determining whether a prisoner has failed to exhaust all available administrative remedies, the Second Circuit has instructed district courts to ask:

(1) whether administrative remedies were actually available, (2) whether the defendants forfeited their right to raise the affirmative defense or by their own

actions precluded the plaintiff from using administrative grievance procedures; and
(3) whether special circumstances have been plausibly alleged that justify the
prisoner's failure to comply with administrative procedural requirements.

*Singh v. Goord*, 520 F. Supp. 2d 487, 495-96 (S.D.N.Y. 2007) (quoting *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004).

In New York State, the administrative remedies consist of a three-step review process. First, a grievance is submitted to the Inmate Grievance Resolution Committee ("IGRC"), a committee comprised of both inmates and facility employees.[5] N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(b). The IGRC reviews and investigates the formal complaints and then issues a written determination. *Id.* Second, upon appeal of the IGRC decision, the superintendent of the facility reviews the IGRCs determination and issues a decision. *Id.* at § 701.5(c). Finally, upon appeal of the superintendent's decision, the Cental Office Review Committee ("CORC") makes the final administrative determination. *Id.* at § 701.5(d). Only upon exhaustion of these three levels of review may a prisoner seek relief pursuant to § 1983 in federal court. *Bridgeforth v .Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing, *inter alia*, *Porter v. Nussle*, 534 U.S. at 524); *see also Neal v. Goord*, 267 F.3d 116, 121 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516.

In addition to the formal grievance procedure described above, the regulations provide for an expedited grievance procedure for claims of employee "harassment." N.Y. COMP. CODES R. & REGS. tit. 7, § 701.8. This expedited procedure was set up because facility employee harassment is of "particular concern to the administrators of department facilities." *Id.*

Pursuant to this expedited procedure, the inmate first reports the incident to the employee's immediate supervisor. *Id.* at § 701.8(a). The inmate's allegations are then given a grievance number and the superintendent (or his designee) must promptly decide whether the grievance, if true, would

---

[5] The IGRC is a five-member body consisting of two voting inmates, two voting staff members, and a non-voting chair (who may be an inmate, staff member of volunteer). N.Y. COMP. CODES R. & REGS tit.7, § 701.4.

represent a bona fide case of harassment. *Id.* at §§ 701.8(b) & (c).

If the superintendent determines that the allegations do not represent a bona fide case of harassment, the allegations are automatically routed to the IGRC for resolution according to the formal three-step grievance procedure outlined above. *Id.* at § 701.8(c). If the superintendent finds that the allegations do represent a bona fide case of harassment, then he must either initiate an in-facility investigation by higher ranking personnel, or request an investigation by the Inspector General's Office, and if criminal activity is involved, the superintendent may request an investigation by the New York State Police Bureau of Criminal Investigations. *Id.* at §§ 701.8(d); *see also Perez v. Blot*, 195 F. Supp. 2d 539, 542-43 (S.D.N.Y. Apr. 10, 2002) (describing the grievance system).

The superintendent must render a decision within twenty-five calendar days of receipt of the grievance. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.8(f). If the superintendent fails to respond within this required time-frame, the inmate may appeal his grievance to CORC by filing a notice of decision to appeal with the inmate grievance clerk. *Id.* at § 701.8(g). If the inmate receives a response from the superintendent and wishes to appeal to CORC, he must file a notice of decision to appeal with the inmate grievance clerk within seven calendar days of receipt of the response. *Id.* at § 701.8(h).

Pursuant to the parties' respective Statements of Material Fact, and supporting documentation, we are able to glean the following.[6] On February 15, 2011, Plaintiff wrote a

---

[6] In reviewing the parties' submissions, the Court is mindful of not only the requirement that we resolve all ambiguities and draw all reasonable inferences in favor of the non-movant, *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998), but also of the Court's obligation to construe a *pro se* litigants papers liberally and "interpret them to raise the strongest arguments that they suggest," *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).

grievance regarding the incident with Defendant Gifford, and although Plaintiff asserts that he submitted the grievance to the IGRC on that same date, the official grievance bears a receipt stamp date of February 21, 2011. Dkt. No. 71, Def.'s 7.1 Statement, at ¶ 9; Dkt. No. 76, Pl.'s 7.1 Statement at ¶ 9; *see also* Dkt. No. 48, Pl.'s Mot. to Strike, at p. 4.[7] Because of the allegations raised therein, the grievance was categorized as "harassment" and was forwarded to the Auburn Superintendent pursuant to the expedited grievance procedure described above. Defs.' 7.1 Statement at ¶ 14; Pl.'s Mot. to Strike at p. 11.

In accordance with DOCCS Regulations, the Superintendent had twenty-five days to render a decision and if no decision is rendered within twenty-five days, the inmate can appeal to CORC. Def.'s 7.1 Statement at ¶ 15. On March 1, 2011, perhaps suffering under the mistaken belief that his grievance remained with the IGRC, Plaintiff wrote a letter to the Superintendent explaining that he had not yet received a response to his grievance and that he would like to appeal the matter to the Superintendent. Def.'s 7.1 Statement at ¶ 11; Pl.'s 7.1 Statement at ¶ 11; Pl.'s Mot. to Strike at p. 6. Then, on March 20, 2011, Plaintiff wrote a letter to CORC explaining that he still had not received a response to his February 15, 2011 grievance and wished to appeal to CORC. Def.'s 7.1 Statement at ¶¶ 16 & 20; Pl.'s 7.1 Statement at ¶¶ 16 & 20; Pl.'s Mot. to Strike at pp. 7-8. The following day, on March 21, 2011, Plaintiff filed the instant civil rights Complaint. Dkt. No. 1.

Thereafter, on April 26, 2012, over two months after Plaintiff filed his grievance, the Superintendent issued his determination on Plaintiff's grievance; Plaintiff asserts he never received such response. Def.'s 7.1 Statement at ¶ 22; Pl.'s 7.1 Statement at ¶ 22. During the pendency of this

---

[7] Plaintiff attached several Exhibits to his Motion to Strike, but he did not separately label them. In referencing these Exhibits, the Court utilizes the page numbers automatically assigned by the Court's Case Management Electronic Case Files System.

civil rights action, Plaintiff wrote several letters to the IGRC further inquiring about his grievance and appeals. Def.'s 7.1 Statement at ¶ 23. On July 10, 2012, Cheryl Parmiter, Auburn's Inmate Grievance Program Supervisor, advised Plaintiff, by a memorandum, that the IGRC never received any appeal of the Superintendent's April 26, 2011 Decision. *Id.* at ¶ 26; Pl.'s Mot. to Strike at p. 11. In response, on July 13, 2012, Plaintiff explained in an appeal of Ms. Parmiter's decision, that he had appealed to CORC on March 20, 2011 and that the failure of prison officials to process his appeal should not be held against him. Def.'s 7.1 Statement at ¶ 27; Pl.'s Mot. to Strike at p. 13. That Letter was apparently interpreted by Ms. Parmiter as an attempt to appeal the Superintendent's April 26th decision and such attempt was deemed to be untimely. Def.'s 7.1 Statement at ¶ 28; Pl.'s Mot. to Strike at p. 14 (noting further that Plaintiff had not provided mitigating circumstances to excuse the untimely attempt to appeal).

By his Motion for Summary Judgment, Defendant argues that the undisputed material facts establish that Plaintiff failed to exhaust his claim through all levels of review because he did not file a timely appeal of the Superintendent's April 26th decision. Plaintiff consistently maintains that he never received responses to his grievance and follow-up letters, nor did anyone ever interview him about his grievance. Furthermore, Plaintiff asserts that his March 20, 2011 Letter/Appeal to CORC was not processed by Auburn's Inmate Grievance Program Supervisor, Cheryl Parmiter, whom he now seeks to add as a defendant in this action. *See* Pl.'s Mot. to Strike; Dkt. No. 77-2, Pl.'s Proposed 3d Am. Compl.

The threshold issue for the Court is with regard to whether administrative remedies were available to Plaintiff. "A court may not dismiss for failure to exhaust administrative remedies unless . . . [it] determines that such remedies are available." *Snider v. Melindez*, 199 F.3d 108, 114 (2d Cir.

1999). The question of availability is not limited to the issue of whether the prison actually had a grievance procedure in place. That, of course, is not the issue before us. Instead, the inquiry for us is whether the otherwise available procedures were rendered unavailable. *See Abney v. McGinnis*, 380 F.3d 663 (2d Cir. 2004); *Hemphill v. New York*, 380 F.3d 680 (2d Cir. 2004). In assessing whether otherwise available procedural remedies were effectively unavailable, this Court must objectively assess whether a "similarly situated individual of ordinary firmness" would have deemed the process available. *Hemphill v. New York*, 380 F.3d at 688 (citation omitted).

It is clear from the documents provided that the Superintendent did not respond to Plaintiff's grievance until well after the twenty-five-day time-frame dictated by DOCCS Regulations. The failure of prison officials to respond to a grievance within the time-frame dictated by regulation has been construed in other Circuits as rendering the procedure effectively unavailable, though it appears that precise issue has not been decided yet in this Circuit. *See Hemphill v. New York*, 380 F.3d at 686, n.6.[8] Thus, we find based upon the undisputed facts, that the Superintendent's failure to respond to Plaintiff's grievance until well after the time-frame set forth in the Regulations objectively rendered Plaintiff's administrative remedies unavailable. Furthermore, Plaintiff avers that he attempted to file an appeal to CORC in the absence of having heard anything on his

---

[8] In *Hemphill*, the Second Circuit suggested that a prison administration's failure to respond to and record grievances as required by the regulations could call into question the notion of availability. *Hemphill v. New York*, 380 F.3d at 686, n.6. In making such statement, the Circuit noted that such facts were not before it and therefore expressed no view on whether such allegations could support a theory of unavailability. But it nevertheless cited a host of cases supporting the proposition that the failure to respond to a grievance within the time limits imposed by regulation renders the administrative remedy unavailable. *Id*. (citing *Cf. Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) ("agree[ing with other circuits] that the failure to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable"); *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) (stating that prison's failure timely to respond renders administrative remedies unavailable); *Foulk v. Charrier*, 262 F.3d 687, 698 (8th Cir. 2001) (holding that defendants failed to prove non-exhaustion where they presented no evidence to refute plaintiff's contention that he could not pursue grievance further after warden did not respond to his grievance); *Underwood v. Wilson*, 151 F.3d 292, 295 (5th Cir. 1998) (holding that "available administrative remedies are exhausted when the time limits for the prison's response set forth in the prison Grievance Procedures have expired")).

grievance, which he was entitled to do pursuant to the Regulations. Yet, there is no record of that appeal being processed. Defendant has provided no facts nor documents to refute Plaintiff's averment and instead relies on Plaintiff's purported experience with the grievance program, having previously filed eleven grievances prior to the one at issue, as proof that Plaintiff was familiar with the grievance procedure and failed to strictly comply. But the inference in this regard should be drawn in favor of the non-movant, in this case, Plaintiff, who opposes the Defendant's request for summary judgment. Given his experience with the grievance program, it is apparent to this Court that a reasonable person of ordinary firmness in Plaintiff's position would have thought that administrative remedies were unavailable to him when 1) he never received a timely response to his grievance and 2) when his attempt to file an appeal was not processed.

Thus, having determined that Defendant's affirmative defense is insufficient, we recommend **granting** Plaintiff's Motion to Strike and **denying** Defendant's Cross-Motion to Dismiss.

### B. Motion to Amend

By his unopposed Motion to Amend, Plaintiff seeks to add two defendants to this action: 1) Harold D. Graham, Superintendent of Auburn; and 2) Cheryl Parmiter, Auburn Inmate Grievance Supervisor. Dkt. No. 72. By his Proposed Third Amended Complaint, Plaintiff asserts that Superintendent Graham failed to properly supervise and train Defendant Gifford, failed to report the incident to the Inspector General, and improperly handled Plaintiff's grievance. Dkt. No. 77-2. He further asserts that Cheryl Parmiter failed to properly process his March 20th appeal to CORC, thereby violating his due process rights.

Because Defendant does not oppose Plaintiff's request to amend, we **grant** the Motion. In light of the significant amount of time that has passed without any meaningful discovery being

conducted, this Court will direct immediate service upon the newly added Defendants. Once the Defendants answer the Third Amended Complaint, the Court will issue a scheduling order setting forth certain mandatory discovery that must be exchanged by the parties as well as setting deadlines for discovery and dispositive motions. For this reason, we also recommend that Plaintiff's Motion for Summary Judgment be **denied without prejudice** and with leave to renew at the close of discovery.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Plaintiff's Motion to Strike Defendant's Affirmative Defense of Failure to Exhaust Administrative Remedies (Dkt. No. 48) be **GRANTED** and Defendants' Cross-Motion to Dismiss (Dkt. No. 59) be **DENIED**; and it is further

**ORDERED**, that Plaintiff's unopposed Motion to Amend (Dkt. No. 77) be **GRANTED**; and it is further

**ORDERED**, that the Court accepts Plaintiff's Proposed Third Amended Complaint for filing and deems it the operative pleading in this case. The Clerk of the Court shall add Defendants Graham and Parmiter to the Docket and file a copy of the Proposed Third Amended Complaint and Exhibits (Dkt. Nos. 77-2 & 77-3) as the Third Amended Complaint;

**ORDERED**, that the Clerk shall issue Summonses for Defendants Graham and Parmiter and forward them, along with copies of the Third Amended Complaint, to the United States Marshal[9] for service upon the newly added Defendants; and it is further

---

[9] Plaintiff has been granted *in forma pauperis* status, pursuant to 28 U.S.C. § 1915, and is therefore entitled to have the United States Marshal effect service on his behalf. Dkt. No. 4.

**ORDERED**, that a response to Plaintiff's Third Amended Complaint be filed by the Defendants or their counsel as provided by the Federal Rules of Civil Procedure; and it is further

**RECOMMENDED**, that Plaintiff's Motion for Summary Judgment (Dkt. No. 74) be **DENIED WITHOUT PREJUDICE** with leave to renew at the close of discovery; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: March 10, 2014
       Albany, New York

_____
Randolph F. Treece
U.S. Magistrate Judge